AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)    ☐ Original    ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

LODGED
CLERK, U.S. DISTRICT COURT
9/10/25
CENTRAL DISTRICT OF CALIFORNIA
BY: ___MRV___ DEPUTY

for the

Central District of California

FILED
CLERK, U.S. DISTRICT COURT
September 10, 2025
CENTRAL DISTRICT OF CALIFORNIA
BY: ___mp___ DEPUTY

United States of America

v.

STEVEN ZAVALETA,

Defendant(s)

Case No. 2:25-MJ-05613
**AMENDED**

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of September 8, 2025 in the county of Los Angeles in the Central District of California, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. § 952(a) | Importation of a Controlled Substance |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
Complainant's signature

Madison Barnes, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: September 10, 2025

Alicia G. Rosenberg
*Judge's signature*

City and state: Los Angeles, California

Hon. Alicia G. Rosenberg, U.S. Magistrate Judge
*Printed name and title*

SAUSA: Blake Hannah

**AFFIDAVIT**

I, Madison Barnes, being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint against Steven ZAVALETA ("ZAVALETA") for a violation of 21 U.S.C. § 952(a): Importation of a Controlled Substance.

2. The facts set forth in this affidavit are based upon my personal observations; my training and experience; and information obtained from various law enforcement personnel. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and part only.

## II. BACKGROUND OF SPECIAL AGENT MADISON BARNES

3. I am a Special Agent ("SA") with Homeland Security Investigations ("HSI"), Department of Homeland Security, and have been so employed since September 2024. Prior to my appointment with HSI, I worked with United States Probation and Pretrial Services for approximately 2.5 years. My relevant training includes a bachelor's degree in legal studies from the University of Wisconsin-Madison and a master's degree in cybercrime and digital investigations from Michigan State University. Additionally, I have completed the Criminal Investigator Training Program and the Homeland Security

Investigations Special Agent Training. During that training, I received advanced training on conducting drug investigations. My duty as a HSI SA, is to investigate various crimes of federal law. I am currently assigned to the HSI Los Angeles International Airport ("LAX") Group.

### III. SUMMARY OF PROBABLE CAUSE

4. On September 8, 2025, U.S. Customs and Border Protection ("CBP") notified HSI that ZAVALETA had arrived at LAX on an inbound flight from London, United Kingdom. CBP officers located approximately 32.3 kilograms ("kg") of ketamine in two suitcases ZAVALETA was traveling with.

### IV. STATEMENT OF PROBABLE CAUSE

5. Based on my review of law enforcement reports, conversations with law enforcement officers and my own knowledge of the investigation, I am aware of the following:

**A.   Background**

6. CBP informed me that, on September 8, 2025, at approximately 5:39 p.m., ZAVALETA was arriving to LAX on American Airlines flight 137 from London, United Kingdom. ZAVALETA was selected for enforcement examination. When CBP contacted ZAVALETA, he was sitting with one black hard sided suitcase and one blue hard sided suitcase. CBP asked ZAVALETA if the bags were his, if everything in the bags belonged to him, if he was carrying anything for anyone else, and if he packed everything himself. ZAVALETA replied indicating that the bags were his, everything in the bags belonged to him, that he was not carrying anything for anyone else, and that he packed

everything himself.  Additionally, CBP confirmed ZAVALETA's name was on the checked bag tags.

7. As CBP began the baggage inspection, officers asked ZAVALETA for the key to the padlock on the blue suitcase. ZAVALETA acted surprised and stated he had not seen the padlock before. Officers then asked ZAVALETA for the combination for the black suitcase and he entered a combination, which did not work. ZAVALETA implied that was the correct combination and he did not know why it was not working.

8. When CBP examined ZAVALETA's bags, they found multiple sealed packages containing a white powder like substance. CBP officers weighed the substance and field tested it.  CBP informed me that the substance weighed approximately 32.3 kg with packaging and field tested positive for ketamine.

B. **ZAVALETA's Statements**

9. On September 8, 2025, at approximately 9:17 p.m., SA Steve Yoon and I conducted an audio-recorded, custodial interview of ZAVALETA in the Federal Inspection area of CBP at LAX.  Prior to conducting the interview, ZAVALETA signed a <u>Miranda</u> waiver, which I read to him verbatim before requesting his signature.

10. At the beginning of the interview, ZAVALETA claimed he only had clothes that he bought in his suitcases. Agents asked ZAVALETA if he packed the bags himself; he said yes, adding that he packed shirts and clothes. Agents asked ZAVALETA if they were his bags and he said yes. Agents asked ZAVALETA if he checked bags and he confirmed that he checked bags and had a carry on.

When agents asked what brand of clothes ZAVALETA bought, he could not provide a specific name.

11. Later in the interview, ZAVALETA claimed he did not know the combination to the lock on the blue suitcase and claimed it was not his bag. ZAVALETA claimed he found a bag in the hotel room. Agents asked if the suitcase he found in the hotel room was the suitcase with the lock and ZAVALETA said no, the one with the code, indicating the black suitcase. ZAVALETA said the blue suitcase with the lock "tripped me out" because the lock was not there before. ZAVALETA stated the blue suitcase had the lock, but the lock was not his. ZAVALETA again said the black suitcase was the one he found and claimed the blue suitcase came back with a lock. ZAVALETA said he took the black suitcase because he was curious and stated he had checked that suitcase.

12. After agents informed ZAVALETA both checked bags contained ketamine, ZAVALETA eventually claimed only the black duffel bag carry on was his and he did not know ketamine was in the other suitcases. ZAVALETA invoked his right to an attorney and the interview was concluded at approximately 9:50 p.m.

## V. CONCLUSION

13. For all of the reasons described above, there is probable cause to believe that ZAVALETA has committed a violation of 21 U.S.C. § 952(a).

/s/
MADISON BARNES, Special Agent
Homeland Security Investigations

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 10th day of September, 2025.

HONORABLE ALICIA G. ROSENBERG
UNITED STATES MAGISTRATE JUDGE